We will take up Liu v. Ashcroft, No. 74281. Good morning. May it please the Court. Joseph S. Porta, on behalf of the petitioner, Mr. Liu. Please speak up a little bit, Counsel. Yes, Your Honor. Thank you. May it please the Court. Joseph S. Porta, on behalf of the petitioner, Mr. Ri Hong Liu. If possible, I would like to reserve two minutes for rebuttal. All right. Watch the clock. Thank you, Your Honor. Petitioner is eligible for relief from removal, and the standard before this Court today is a substantial evidence standard. Here, the immigration judge denied relief, primarily finding that this petitioner was not credible. The I.J. also found with a much less or with a much more limited discussion that he had failed to meet his burden of proof. Of course, this case was filed, an appeal was filed with the Board, and the Board dismissed the appeal with a very terse decision. In that decision, the Board only agreed with the immigration judge's conclusion that the petitioner has failed to meet his burden of proof to show past persecution or a well-founded fear of persecution in China or the likelihood of torture to be eligible for relief from removal. As such, the BIA did not address credibility. Right. It doesn't seem to me that the I.J. expressly made a credibility finding that rather it was more he felt the evidence wasn't sufficient, but he didn't make an express finding. There was some speculation in the record, Your Honor, that led me to believe at least that the judge was questioning the veracity of his statements. Right. You know under our law, the I.J. must make an express finding for us. Right. On specific cogent reasoning. Right. I didn't see anything of that nature. Right. In any event, under Kateria, which is one of this Court's precedent, which is located at 232 F. 3rd, 1107, Kateria specifically holds that if the BIA fails to make an adverse credibility determination, that the Respondent's testimony is taken as true. So what we have before us is a true record, Your Honors, and I wanted to run a little bit of the facts by you since asylum is such a fact-sensitive issue. Here we have a petitioner that worked at a public company in China. Public company meaning government run. During lunch one day, this petitioner voiced disapproval for the company's recent firing of some Falun Gong practitioners. This record before us today establishes that Falun Gong is a persecuted group in China. There are several instances of this in the record, if I may address to the Court. Page 110 of the Certified Administrative Record states, and I quote, since mid-1999, the government has waged a severe political, propaganda, and police campaign against the Falun Gong spiritual movement. The campaign intensified significantly throughout the year. Moreover, that same State Department report, which was submitted by the government, states that during the year there were numerous credible reports of abuse of Falun Gong practitioners by the police and other security personnel, including police involvement in beatings, detention under extremely harsh conditions, and torture. Now, the consequence of Mr. Liu's vocal disapproval resulted in a ten-day detention that included a physical beating and a bloody lip. Now, this detention was done by his work unit and a government work unit at that. Now, presumably tired and worn down after this ten-day detention, Petitioner was forced to write a confession stating that he sympathized with the Falun Gong. Moreover, he was also forced to write a guarantee that he would not be involved with Falun Gong in the future. Here, the interrogations, the beating, the coerced confession, and the involuntary guarantee were all executed by officials of the company. Thereafter, Petitioner was required to report to a neighborhood committee and to the police for monitoring after his release. It's no small wonder, and it shouldn't be to this court, why the Petitioner decided to flee China. Mr. Porter. Yes, Your Honor. I think you're proceeding with your argument on the assumption that the board adopted the decision of the IJ, and therefore, we review the decision of the IJ. Is that the theory of your argument? The theory of my argument more is that we have a credible record before us. It's because the board's not. No, you're missing the point. Let me tell you what the problem seems to be. And that is that this decision by the BIA says that they agree with the conclusion of the IJ, but we can't tell from it whether they have adopted the IJ's decision as their own. If they have, then we would review the IJ decision. And your argument makes a lot of sense, the way you're proceeding. But if the BIA makes its own decision, then we review the BIA decision. However, in this case, we can't tell whether the BIA made its own decision or whether it adopted the decision of the IJ. So I would think you would be urging us to say the BIA adopted the decision of the IJ, and therefore, we have to look at what happened before the IJ, and then your argument makes a lot of sense. What do we do with this weird decision by the board? Well, I would urge, Your Honor, that since the board failed to put any facts in there relevant to what their conclusions are based upon, that the only thing in the record that we have left that we're limited to is the IJ's decision to give us some insight into what the board was thinking. Well, that makes a lot of sense, but that doesn't necessarily always carry the day. Absolutely. That's a good argument. Absolutely. I do agree with you, Your Honor, on that point. But nevertheless, in this instant matter, the government is basically claiming two reasons why the Petitioner is ineligible for asylum. First, they contend that it's nonmembership in the Falun Gong and the absence of police involvement in the detention and beating that they undermine his claims. These are basically the two points that the Respondent is raising on appeal. I'd like to address each of those independently. First, the Petitioner's participation in Falun Gong is unnecessary in order to succeed under the imputed political opinion doctrine before this Court. The focus of that doctrine, the political opinion doctrine, turns away from the views of the victim and looks to the views of the persecutor. Specifically, this Court looks to the political views of the persecutor rightly, that the persecutor rightly or in error attributes to his victims and not to the persecutor's own political opinions. Now, if the persecutor attributes a political opinion to the victim correctly or in error and acts upon that attribution, this imputed view becomes the applicant's own political opinion. It's inopposite whether Mr. Liu was involved in the Falun Gong. Thus, I believe that this theory of ineligibility raised by the Respondent is without merit. The second point is that this record establishes that the Petitioner worked at a public company in China, thus having a government actor involved in his persecution. The record clearly states that the persecutor was a, quote, special security worker, quote, unquote, assigned by the government. That's located on page 57 of the record. In fact, the country conditions in the record submitted by the government indicate that the government work units and neighborhood committees do exist and that these government agencies were originally charged with monitoring activities and attitudes. Nevertheless, Petitioner is also unaware of any precedent requiring a persecutor to be a member of the police department. Indeed, this court has held in novice that if there is no evidence of a legitimate prosecutorial purpose for a government's harassment of a person, there arises a possibility that the perpetrator could be a member of the police department. In fact, this court has held in novice that if there is no evidence of a legitimate  that the perpetrator could be a member of the police department. Now, the record states that Petitioner's treatment of harassment is political. Novice is located at 217 F. 3rd, 646. It's a case from the circuit in the year 2000. Now, the record establishes that Petitioner's treatment is persecution by a government actor based upon the imputed political opinion doctrine. He was beat. This was done by his company, and Respondent submits that he's eligible for all the forms of relief that he's presented to this Court. Do you want to reserve some time? Yes, I do. I'd like to reserve the remainder of my time. All right. Thank you, Counsel. Thank you. May it please the Court, my name is Anne Tumeya, I represent the United States Attorney General. The hurdle which cannot be overcome in this case is the fact that Mr. Alou has failed to satisfy his burden of proof with direct and specific evidence. Ms. Tumeya, what do we do with this decision by the Board? Your Honor, one would have to take a look at both the Board's decision and the Immigration Judges' decision. Under the analysis that this Court has presented in the prior cases where the Board's decision basically adopts or affirms the conclusion of an Immigration Judges' decision, if there's no actual reasoning, then if the Immigration Judges' decision provides reasoning that could be considered thorough enough and careful enough, then the Court may take a look at the Immigration Judges' decision in combination with the Board's decision. Counsel, you may, I don't know if you can get word to the BIA on this, but lately they've been issuing, you're probably well aware, we're well aware because we get so many of these appeals, but lately it's been very unclear whether they're doing de novo review or adopting the IJ's decision. And sometimes they say we adopt the decision of the Immigration Judge and then they put a parenthetical in saying this means that we've done an independent review and we agree. So the BIA is making our review very difficult by not being clear about what it's doing. And I don't know, you're from Washington, so maybe you can have some influence back there and have them tell us so we know what we're supposed to be looking at when we review. Yes, Your Honor. And all I can say is that we're doing our best to try to facilitate your review to the extent that we can. Okay. Thank you. But given what we do have in this case, then we took a, we take a look at the record. And because the Court's review is based on whether or not there is sufficient evidence in the record to compel a reasonable fact-finder to conclude differently from the Board or the Immigration Judge, then one has to take a look at the facts. And the facts here are that what do we do with the Petitioner's credibility where there has not been an express finding that he was incredible? And under the Ninth Circuit precedent, then one assumes that it is credible. However, you're arguing, even assuming that his testimony is credible. Yes, Your Honor. Even assuming that there is substantial evidence in the record to support the IJ's determination. Correct, Your Honor, because it is his burden to provide not only credible but direct and specific evidence to establish his burden of proof. And here, ultimately, what we have is an employment problem or an employment dispute because his asylum claim is based on his termination or an incident that occurred with his employer who apparently detained him for ten days and interrogated him, slapped him, and then terminated him because he criticized their decision to fire two employees who were Falun Gong members. Now, Petitioner is not a Falun Gong member, and he has specifically stated that he has never been and does not intend to practice Falun Gong. This event that he relies upon merely stemmed from a statement he said criticizing the company's decision. And the results occurred because of that, and it involved only the company. It involved company personnel, the security people that were only company employees, and his immediate supervisors. There's no real link to government actors here, even though Petitioner has claimed, well, it was a communally owned company such that there might be some sort of government connection. This was a village-owned company, and there's no real tie between a village-owned company, a public company, and government action. Isn't a village a government entity? Your Honor, a village can be, but where there's some influence by the village, it doesn't necessarily mean that the village directs all the decisions by the company. In fact, if one were to jump to that conclusion, then that would mean that a company director who had any personal vendetta against Mr. Liu could possibly just fire him and say, well, Mr. Liu could then say, well, even though it was a personal vendetta and there's no real evidence of a personal vendetta, so one would have to assume because it was a public company and there was some possible village influence that the decision to fire him was not due to a personal vendetta, but because it was a government action. But in this case, after his detention, he was required to report to the Neighborhood Council? Your Honor, that is what is in the record, and that's a little bit unclear, too, because here what we have is no connection, no direct specific evidence connecting any government action, because one would have to speculate that after the company took this action with him, that the company somehow reported it to the village authorities to require him to report to the police. There's no real evidence here. The letter in the record from his wife, there's several letters in the record about that, aren't there? The letters only state that he did have to report to the village neighborhood committee as well as the police. However, those letters do not state why or give us any explanation as to or to tie in the gap between his termination from his employer and then the requirement for him to report to the police and the neighborhood committee. So the government's view is this is strictly an employment decision by a private employer? Your Honor, it's a public employer. However, the government's position is that Petitioner has not established and that his burden proved to show there was any protected interest other than an employment problem. There was no actual fear of persecution on account of an imputed political opinion here. Well, they made him do a confession letter, and this is taking his testimony as true. Yes, Your Honor. And then they warned him when they released him from detention to report to them and under their watch. And the question says, what were you supposed to, who were you supposed to report to, to the local police department? So how can that not be the government, unless you're arguing that the local police department isn't the government? Your Honor, the local police department is the government. However, again, there's a couple of problems here. First, the problem is with his burden of proof. If one looks at his testimony. I mean, you've already said we take it as true. He says Qingmeiwei in China is the very basic unit in the government, and then the police station is the very basic local law enforcement unit. So if we take that as true, and there's nothing in the State Department reports that contradicts that. Your Honor, there's two problems, if I may. The first is, again, his burden of proof. If one takes a look at his testimony as a whole, it's very vague and confusing. At times his responses aren't clear because, as an example, if one looks at page 53 of the administrative record, the testimony beginning with the second question, in your admission, did you admit to any specific acts? His response, in fact, I have done nothing wrong, but they keep on saying I did something wrong. Question, you're not listening to me, sir. In your confession, did you admit to any specific facts? Answer, I admit that my opinion about Falun Gong. Question, did you confess to being a member of Falun Gong? Answer, no, I have never practiced Falun Gong. Question, will you just listen to the question. In your confession letter, did you admit to being a member of Falun Gong? I'm not asking you whether it's true or not. I'm asking you what was in the letter. Answer, yes. Question, this is what you just told me. You told me in your letter so that you express sympathy and support for Falun Gong. Now you're telling me you admitted to being a member of Falun Gong? Answer, because of pressure they gave me when they asked me whatever, I admit them what they asked. It goes on. I don't want to take up too much time in terms of that, but that is just one example of how his responses are unspecific. And sometimes he does say that the police use him. Counsel, you're not being responsive. I was asking you about the government-slash-police issue, and now you're on to the imputed political opinion issue or imputed religious opinion issue. Your Honor, I'm sorry if I'm not conveying my first point, though. I am trying to address Your Honor's question. It's because he hasn't shown that his responses were vague and nonspecific. In one instance, he says, yes, it was the police, but then he later describes it as being the neighborhood committee that he reports to. He also says that it was the police that detained him, but then he later explains, oh, no, it was the public or the security personnel for his company and not the police. So when his responses are inconsistent and vague with regard to who exactly detained him and what exactly happened, it's difficult to establish who the actors were. And when he says the police, then he's first speaking of the company's security personnel, and then later we do admit that he testifies he had to report to the local police. But again, the problem there is he's not established a connection between what happened with the company and then his obligation to report to the police and the neighborhood committee. In that regard, it's problematic because he hasn't established these connections. There's different gaps. And even though his testimony may be credible, it can be the vague and nonspecific nature of his evidence which creates a problem. And in doing so, he's unable to or he's unable to satisfy his burden of proof. So even though he may have suffered an unfortunate experience, the record does not fully establish and fill in these gaps, and that's where his problem is. And when we look at the record, ultimately it boils down to an employment problem. He hasn't really met his obligation, and the problem isn't necessarily with his employment. It is the entire evidence that he submitted. All right. Counsel, over your time, does anybody have any other questions? No. All right. Thank you very much, counsel. I think we understand your argument. Thank you, Your Honors. I'd like to reiterate to this Court that there are no gaps in this testimony. We have the four letters here from Respondents, or from the Petitioners, family members, coworkers, neighbor, and another individual. Let me read a little bit from the wife's letter. Actually, why don't you just give us the record cites and use your time for argument. The record cites, absolutely. The letters are contained respectively. The letter from the wife is at 138. The letter from his neighbor is at 144. The letter from an ex-coworker is at 148. And the letter from another coworker is at page 153. Those are the translated portions. Taking these letters together, they show what? Taking these letters together, it shows that he was arrested because the government wrongfully imputed a political opinion on him based upon Falun Gong. They thought that he was a member. They also established that he had to report to the Neighborhood Committee and that these actions were as a direct result from what happened to him at work, which gives the nexus that I believe the government is trying to show that doesn't exist. He was with the government company. He got persecuted by government agents. The record also establishes that the person that was in the government company was put there by the government to enforce security there. Secondly, the letter from his wife specifically stated that even after the Petitioner departed China, that the Neighborhood Committee and the police came looking for him at his house, and that they threatened that it would be serious if he refused to come back. I don't believe there are any gaps in this record, Your Honors. I believe that the testimony is pretty clear. The government's conceding that he's credible. And now it's almost as if they're sidestepping, saying, well, we have a credible record. It shows that he was beat. It shows that it was the government. It shows that the police monitored him afterwards. It showed that the Neighborhood Committee monitored him afterwards. But there's not enough here to show that this man was persecuted. I definitely disagree with that, and I submit to this Court that he has established all his burdens of proof. And that there's not substantial evidence supporting the BIA's decision. Thank you, counsel. Does anybody else have any more questions? Thank you very much. The case of Liu v. Ashcroft will be submitted. And we'll take up Fang v. Ashcroft. I'm sorry. It's Zhang v. Ashcroft. I think we've corrected the docket sheet. You may proceed.
judges: Browning, Thompson, Wardlaw